IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Tudor Insurance Company,<br><br>      Plaintiff,<br>v.<br><br>1st National Title Insurance Agency, LLC,<br><br>      Defendant. | MEMORANDUM DECISION AND ORDER DENYING FIDELITY NATIONAL'S MOTION TO INTERVENE<br><br>Case No. 2:11-CV-01150 BCW<br><br>Magistrate Judge Brooke Wells |

Before the Court is Fidelity National Title Insurance Company's (Fidelity) Motion to Intervene.[1] Fidelity seeks to intervene in this action as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure.[2] Alternatively, Fidelity seeks permissive intervention under Rule 24(b).[3] As set forth below, the Court DENIES Fidelity's motion.[4]

## BACKGROUND

Plaintiff Tudor Insurance Company (Tudor) filed this case seeking a "judicial declaration that its errors and omissions liability policy does not provide coverage for defendant 1st National Title Insurance Agency's (1st National) liability arising from 1st National's involvement in a series of transactions concerning a parcel of real estate located in Draper, Utah."[5] In short, Tudor issued an errors and omissions liability policy to 1st National who is a title insurance agency involved in real estate transactions. This policy contains certain exclusions and

---

[1] Docket no. 10.

[2] Fed. R. Civ. P. 24(a).

[3] Fed. R. Civ. P. 24(b)

[4] Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the Court has concluded that oral argument is not necessary and will determine the motion on the basis of the written memoranda. *See* DUCivR 7-1(f) (2011).

[5] Op. p. 1.

conditions that bar coverage. 1st National was involved in transactions concerning the Draper, Utah property (subject property) and issued a title policy to Off-Piste Capital, who along with several other parties, claims an ownership interest in the subject property. This policy was underwritten by Fidelity, the party that now seeks to intervene in this action.[6]

The subject property and the transactions surrounding it are involved in two lawsuits filed in the Utah State Courts. First, in 2008, a lawsuit was filed by Shane Morris seeking to terminate all competing interests and to quiet title in the subject property in favor of Mr. Morris. Off-Piste Capital, among others, was named as a defendant in the Morris Action. Pursuant to the title insurance policy issued by 1st National, Off-Piste demanded that Fidelity provide it with a defense in the Morris Action. Next, in 2010, Fidelity filed a lawsuit against 1st National alleging that 1st National breached an agency agreement between Fidelity and 1st National because of 1st National's negligence in handling the Off-Piste Capital transaction.

Finally, in December 2011, Tudor filed the instant action in this Court against 1st National. Tudor seeks declaratory relief and rescission of the errors and omissions policy it issued to 1st National. Fidelity filed the instant Motion to Intervene on January 18, 2012.

## DISCUSSION

A. **Intervention as a Matter of Right**

Rule 24(a) provides:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.[7]

---

[6] Fidelity was formally known by Lawyers Title Insurance Company.

[7] Fed. R. Civ. P. 24(a) (2011) (all citations to the Federal Rules are to the 2011 revised edition). The Court notes that in 2007 Rule 24 was amended as part of the general restyling of the Civil Rules to make them easier to understand and more consistent with each other. The changes were only for stylistic purposes.

Accordingly, under 24(a)(2) which is applicable here, a movant may intervene as of right if: (1) the application is "timely"; (2) the movant "claims an interest relating to the property or transaction that is the subject of the action"; (3) the movant's interest may be impaired or impeded by resolution of the action; and (4) the movant's interest is not adequately protected by existing parties.

1. *Timeliness*

There is no opposition to the timeliness requirement by any of the parties. This case is in the early stages of litigation and the Court finds that Fidelity's Motion to Intervene is timely.[8]

2. *Fidelity's Interest in the Subject of this Litigation*

Whether or not Fidelity has an interest in the subject of this litigation is a much more difficult question. Fidelity argues that it has an interest in this litigation because it will determine "Tudor's obligations toward 1st National, particularly whether Tudor must cover losses Fidelity . . . incurred as a result of 1st National's wrongdoing."[9] Tudor responds that Fidelity's interest in this litigation is contingent and that a threat of economic injury which arises from a contingent interest is "insufficient to establish the necessary 'direct, substantial, and legally protectable' interest."[10]

---

[8] *See Genesis Ins. Co. v. Crowley*, 2005 WL 3989772 *2 (D.Colo.) (finding that the motion to intervene was timely because it was in the early stages of litigation); *see also Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) ("The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'") (quoting *Sanguine, Ltd. v. United States Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984)).

[9] Mem. in supp. p. 6.

[10] Op. p. 4 (quoting *City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996)) (emphasis omitted).

The courts in this Circuit have repeatedly stated that a proposed intervener's interest in the proceedings must meet a "'direct, substantial, and legally protectable'"[11] test. Fidelity in its initial moving papers points to this standard arguing that it is met in this instance. In its reply, however, Fidelity retreats from its initial position by seeking to undermine the moorings of the direct, substantial, and legally protectable interest test as if to cast it out to sea to face certain destruction. Fidelity argues that the direct, substantial, and legally protectable interest test, or what has been termed the "DSL" test, is "difficult, if not impossible to define."[12] Instead of applying the DSL test strictly, Fidelity asserts that this Court should take a more "pragmatic approach to Fidelity's request to intervene"[13] In support of its position Fidelity cites to the Tenth Circuit's criticism of the DSL test in *San Juan County, Utah v. U.S.*.[14]

In *San Juan* the Tenth Circuit undertook a comprehensive review of the DSL test from its beginnings to its modern day application. The court stated that the "DSL test misses the point [because] [t]he central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention."[15] As noted by the *San Juan* court, the DSL test has a very questionable beginning because it "comes from a district-court opinion whose reasoning was rejected on appeal."[16] Its application in cases has been difficult, replete with underlying pragmatic concerns and in some cases applied without identifying how the qualifying

---

[11] *Coalition of Arizona/NewMexico Counties for Stable Economic Growth v. Dep't of the Interior*, 100 F.3d 837, 840 (10th Cir. 1996) (quoting *Vermejo Park Corp. v. Kaiser Coal Corp. (In re Kaiser Steel Corp.)*, 998 F.2d 783, 791 (10th Cir. 1993)); *see also San Juan County, Utah v. United States*, 503 F.3d 1163, 1192 (10th Cir. 2007); *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002); *Ozarks*, 79 F.3d at 1042.

[12] Reply p. 2.

[13] *Id.* at p. 5.

[14] 503 F.3d 1163.

[15] *Id.* at 1193.

[16] *Id.*; *see Hobson v. Hansen*, 44 F.R.D. 18, 24 (D.D.C.1968) (stating that "required for intervention is a direct, substantial, legally protectable interest in the proceedings").

interest was legally protectable.[17] The *San Juan* court noted that this Circuit has also found application of the DSL test problematic.[18] In short, the *San Juan* court determined that intervention of right is not a mechanical rule. Rather, it "requires courts to exercise judgment based on the specific circumstances of the case"[19] and, is highly fact-specific. "The applicant must have an interest that could be adversely affected by the litigation. But practical judgment must be applied in determining whether the strength of the interest and the potential risk of injury to that interest justify intervention."[20]

> i.  *Principles of Distinction*

Also of importance to the instant case is the principle of distinction mentioned by the *San Juan* court. That court stated "Our previous decisions under Rule 24(a)(2) have distinguished between cases that implicate solely private rights and cases that raise an issue of public interest."[21] Indeed, the "'Tenth Circuit follows a very broad interpretation of the interest requirement with respect to public law issues . . . .'"[22] Thus, based upon the Supreme Court's holding in *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*,[23] "the requirements for intervention may be relaxed in cases raising significant public interests."[24]

---

[17] *See e.g., Security Insurance Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377 (7th Cir. 1995); *Illinois v. Sarbaugh*, 552 F.2d 768 (7th Cir. 1977); *United States v. Union Elec. Co.*, 64 F.3d 1152 (8th Cir. 1995); *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861 (8th Cir. 1977); *So. Cal. Edison Co. v. Lynch*, 307 F.3d 794 (9th Cir. 2002); *Yniguez v. Arizona*, 939 F.2d 727 (9th Cir. 1991).

[18] *See e.g., Natural Resources Defense Council, Inc. v. U.S. Nuclear Reg. Comm.*, 578 F.2d 1341, 1345 (10th Cir. 1978) (failing to identify any interest of the interveners as being "legally protectable").

[19] *San Juan*, 503 F.3d at 1199.

[20] *Id.*

[21] *Id.* at 1201

[22] *Id.* (quoting 6 James Wm. Moore et al., Moore's Federal Practice § 24.03 [2][c], at 24-35 (3d ed. 2006)); *see also Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1251-53 (10th Cir. 2001); *Coalition*, 100 F.3d at 840-44.

[23] 386 U.S. 129, 136 (1967).

[24] *San Juan*, 503 F.3d at 1201.

ii.     *Economic Injury Principle*

The Tenth Circuit has also held that the threat of economic injury from the outcome of litigation gives an applicant for intervention the requisite interest.[25]  But, a purported intervener's contingent interest in pending litigation has been deemed insufficient to permit intervention.[26]

iii.    *Analysis*

With the principles annunciated in these cases in mind the Court now turns to the question at hand, whether Fidelity has a sufficient interest in the instant litigation?  As noted by my colleague from a sister court in this Circuit, "The Tenth Circuit has not addressed the specific issue of whether an injured party with a contingent interest in insurance policy proceeds may intervene as a matter of right in a declaratory judgment action between the insurer and the alleged tortfeasor/insured."[27]  But, there is a split of authority from other circuits that have addressed this question.  Some courts have determined that an injured party's contingent interest in insurance policy proceeds does not preclude intervention as a matter of right.[28]  Other courts have concluded that a contingent interest in insurance proceeds is simply too remote and speculative to satisfy the interest requirement.[29]  The only case that appears to have dealt with this question in this Circuit is *Genesis Ins. Co. v. Crowley*.[30]

---

[25] *Utahns for Better Transportation*, 295 F.3d at 1115.

[26] *Ozarks* 79 F.3d at 1042.

[27] *Genesis*, 2005 WL 3989772 *3 (D.Colo.).

[28] *See Teague v. Bakker*, 931 F.2d 259 (4th Cir.1991); *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377 (7th Cir.1995) (citing *Hartford Accident and Indemnity Co. v. Crider*, 58 F.R.D. 15 (N.D.Ill.1973)); *Continental Ins. Co. v. Law Office of Thomas J. Walker*, 171 F.R.D. 183 (D.Md.1997); *TIG Specialty Ins. Co. v. Financial Web.Com, Inc*., 208 F.R.D. 336 (M.D .Fla.2002); *St. Paul Fire & Marine Ins. Co. v. Summit-Warren Indus. Co.*, 143 F.R.D. 129, 134 (N.D.Ohio 1992*); New Hampshire Ins. Co. v. Greaves*, 110 F.R.D. 549 (D.R.I.1986).

[29] *See Liberty Mutual Ins. Co. v. Treesdale, Inc*., 419 F.3d 216, 2005 WL 1939798 (3rd Cir.2005); *In re HealthSouth Corp. Ins. Litigation*, 219 F.R.D., 688 (N.D.Ala.2004); *General Star Indemnity Co. v. Virgin Islands Port Authority*, 224 F.R.D. 372 (D.C.V.I.2004); *Ace American Ins. Co. v. Paradise Divers, Inc.*, 216 F.R.D. 537 (S.D.Fla.2003); *Redland Ins. Co. v. Chillingsworth Venture, Ltd.*, 171 F.R.D. 206 (N.D.Ohio 1997); *Independent Petrochemical*

In *Crowley*, an insurance company filed a declaratory judgment action to determine its obligations arising from a directors and officers' liability policy issued to the defendants who had been sued for tort claims by a bankruptcy trustee in another action. The trustee sought to intervene in the declaratory judgment action arguing that he had an interest in the litigation. The Magistrate Judge rejected the trustee's arguments concluding that, in the absence of a judgment against the officers, the trustee's contingent interest in the coverage litigation was "too attenuated" to satisfy the Rule 24 requirement that the interest be "direct, substantial and legally protectable."[31]

Tudor and 1st National—who both oppose Fidelity's intervention—argue *Crowley* is directly on point. Just like in that case, "Fidelity is a stranger to Tudor's contract of insurance with 1st National" and it has not secured a judgment in the other action filed against 1st National in state court. In opposition, Fidelity argues the *Crowley* court disregarded the Tenth Circuit's generally liberal view in allowing intervention without explaining why. Fidelity asserts that *Crowley's* reasoning is suspect and instead, this Court should adopt the approach found in *San Juan*. The Court is not persuaded by Fidelity's position. Contrary to Fidelity's assertions, the Tenth Circuit's approach in *San Juan* is not incompatible with *Crowley*.

In *San Juan* the Tenth Circuit drew a distinction between when to apply a more liberal standard in allowing intervention. This relaxed view was appropriate in cases that raise an issue of public interest.[32] That court also directed other courts to use a pragmatic case by case approach. Here, the dispute involves private rights between parties and does not raise issues of

---

*Corp. v. Aetna Casualty & Surety Co.*, 105 F.R.D. 106 (D.D.C.1985), aff'd without opinion 784 F.2d 1131 (Table) (D.C.Cir.1986).

[30] 2005 WL 3989772

[31] *San Juan*, 503 F.3d at 1201.

[32] *Id.* at 1201

public interest. Further, similar to the facts in *Crowley*, Fidelity has a contingent interest in the instant litigation and lacks a judgment against 1st National. Even if Tudor were to prevail in this action, effectively nullifying its policy with 1st National, there is nothing before the Court indicating 1st National would not be able to satisfy a judgment obtained in the state court action. The Court finds the contingent interest Fidelity has in this case fails to satisfy the direct, substantial and legally protectable test. [33] Indeed, if the Court were to hold otherwise, it would be difficult to identify how any qualifying interest Fidelity may have is legally protectable. [34]

    3.  *Whether Fidelity's Interest may be Impaired or Impeded*

To satisfy this requirement Fidelity must show that the disposition of Tudor's case against 1st National "may as a practical matter impair or impede [Fidelity's] ability to protect its interest."[35] The "'question of impairment is not separate from the question of existence of an interest.'"[36] The impairment or impediment need not be of a strictly legal nature[37] and the Court may consider any "significant legal effect in the applicant's interest."[38]

Here, just like the Court determined previously in addressing the question of the adequacy of Fidelity's interest in this litigation, the chance that Fidelity's interest may be impaired or impeded is remote. Nothing in this action will prevent Fidelity from maintaining its action in state court against 1st National. Further, there is nothing before the Court indicating that 1st National is facing insolvency if they do not prevail in the instant matter. And, even if as alleged by Fidelity its losses exceed $2,000,000 from the other action, the concerns raised about

---

[33] *Ozarks* 79 F.3d at 1042.

[34] *See e.g., Natural Resources Defense Council*, 578 F.2d at 1345 (failing to identify any interest of the interveners as being "legally protectable").

[35] Fed. R. Civ. P. 24(a)(2).

[36] *Utahns for Better Transp.*, 295 F.3d at 1116 (quoting *Utah Ass'n*, 255 F.3d at 1253).

[37] *Natural Resources*, 578 F.2d at 1345.

[38] *Id.*

1st National's ability to cover such losses are conjecture at this point.  Therefore, the Court finds Fidelity's interest will not be impaired or impeded by this action.[39]

### 4.  *Adequacy of Representation by Existing Parties*

The burden is on the applicant seeking intervention to show that the representation by the existing parties may be inadequate, but such a burden is "minimal."[40]  "An applicant may fulfill this burden by showing collusion between the representative and an opposing party, that the representative has an interest adverse to the applicant, or that the representative failed in fulfilling his duty to represent the applicant's interest."[41]  "[T]he possibility of divergence of interest need not be great in order to satisfy the burden of the applicants...." [42]  Yet, "representation is adequate 'when the objective of the applicant for intervention is identical to that of one of the parties.' "[43]

Fidelity argues that 1st National "may not be able to adequately represent Fidelity" and that it "appears that 1st National's position is adverse to [its] position."[44]  In support Fidelity asserts that 1st National is represented in this matter by its owner, Jax Pettey, an attorney whose firm according to its website does not maintain a litigation practice.  Further, Fidelity asserts that 1st National "joined in Tudor's opposition to Fidelity's Motion" which raises the question and accompanying allegation of collusion between 1st National and Tudor to avoid any payment to

---

[39] *Ozarks*, 79 F.3d at 1042-43.

[40] *National Farm Lines v. I.C.C.*, 564 F.2d 381, 383 (10th Cir. 1977); *see also Trbovich v. United Mine Wkers.*, 404 U.S. 528, 538 n. 10 (1972).

[41] *Sanguine, Ltd. v. U.S. Dept. of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984).

[42] *Natural Resources Defense Council*, 578 F.2d at 1346.

[43] *Ozarks*, 79 F.3d at 1042 (quoting *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872 (10th Cir. 1986)); *see also Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (9th Cir.1996) ("Where an applicant for intervention and an existing party 'have the same ultimate objective, a presumption of adequacy of representation arises.'") (quoting *Oregon Envtl. Council v. Oregon Dep't of Envtl. Quality*, 775 F.Supp. 353, 359 (D.Ore.1991)).

[44] Reply p. 9.

Fidelity. The Court is not persuaded by these conclusory allegations that have no support in the record.

Here, Fidelity and 1st National have identical interests—to obtain a judicial declaration that Tudor is obligated to provide maximum coverage under the errors and omissions liability policy it issued to 1st National. In the Tenth Circuit, representation is presumed adequate when the purported intervener's objective is identical to that of the one of the parties.[45] And there is nothing offered by Fidelity to rebut this presumption.

Therefore, even if Fidelity's interest in this litigation was found sufficient under Rule 24(a), Fidelity's Motion to Intervene would still be denied because Fidelity has failed to meet its burden to show that 1st National's representation is inadequate to protect its interests.[46] Accordingly, Fidelity's Motion to Intervene as a matter of right is denied.

### B. Permissive Intervention

Rule 24(b)(1) provides: "On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact."[47] The Rule goes on to provide that "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."[48]

Accordingly, under Rule 24(b) the Court, in its discretion, may or may not permit intervention, even if the Rule's requirements are otherwise satisfied.[49]

---

[45] *Ozarks*, 79 F.3d at 1042 ; *Bottoms*, 797 F.2d at 872.

[46] *Ozarks*, 79 F.3d at 1042-43.

[47] Fed. R. Civ. P. 24(b)(1).

[48] *Id.* at 24(b)(3).

[49] *See Kiamichi R. Co., Inc. v. Nat'l Mediation Bd.*, 986 F.2d 1341, 1345 (10th Cir. 1993); *Ozarks*, 79 F.3d at 1043.

Because Fidelity's interests are aligned with 1st National in this case, the Court finds it is unnecessary to allow Fidelity to intervene under 24(b)(1).  Further, allowing Fidelity to intervene would likely increase the costs of this litigation for Tudor, because Fidelity would be making the same arguments as 1st National asserting that the errors and omissions policy issued by Tudor is valid.  Such duplicative arguments and the addition of Fidelity as party would create undue delay to the resolution of this action.  Therefore, the Court denies Fidelity's request for permissive intervention.[50]

---

[50] *See Crowley*, 2005 WL 3989772 *5 (D.Colo.) (recommending that the movant not be allowed to permissively intervene because they would make the same legal arguments as the current defendants); *General Ins. Co. of America v. Rhoades*, 196 F.R.D. 620 (D.N.M. 2000) (denying request for permissive intervention because injured party's interest in insurance coverage was adequately represented and where injured party's pleadings and litigation position would merely duplicate the insured's).

ORDER

For the foregoing reasons Fidelity's Motion to Intervene as a matter of right, or in the alternative via permission, is DENIED.

DATED this 9 March 2012.

Brooke C. Wells
United States Magistrate Judge